**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Carlos Reyes Santiago, Edna Santiago Sánchez, Carlos Reyes Pagán and the conjugal partnership of Edna Santiago Sánchez and Carlos Reyes Pagán,<br><br>Plaintiffs,<br><br>v.<br><br>JetBlue Airways Corporation,<br><br>Defendant. | Civil No. 11-1205 (SEC)<br><br>Plaintiffs demand trial by jury |

**MOTION TO DEEM MATTERS ESTABLISHED DUE TO VIOLATION OF DISCOVERY ORDERS**

**TO THE HONORABLE SALVADOR E. CASELLAS:**

COME NOW the plaintiffs, through their undersigned attorneys, and respectfully state and pray as follows:

## I. Introduction

As this Court has stated, "bear in mind always that we are engaged in a tediously complex exercise in search of the facts and the applicable law in order to ensure that justice will be done. Remember, also....that this is not a football or hockey game". In re San Juan Dupont Plaza Hotel Fire Litig., 1989 WL 168401 (D.P.R. 1988).[1]

In this case, what started out as a simple search for facts when the Reyes family sent JetBlue *Interrogatories* and *Requests for Production of Documents* has grown into a Hydra that has devoured over 5 months of time and effort.

[1] Referring to Roscoe Pound, The Causes of Popular Dissatisfaction with the Administration of Justice (reprinted at 35 F.R.D. 273 (1964)) ("'the idea that procedure must of necessity be *wholly contentious* disfigures our judicial administration at every point'") (italics in original).

Regardless of that, the Reyeses still lack a straight answer from JetBlue since it has not, despite two Court *Orders*, fully and frankly responded to the discovery requests.

Particularly, upon analyzing JetBlue's multiple responses and comparing them with other sources of information, it has become abundantly clear to the Reyeses that JetBlue has, among other legal violations, not produced documents it knows exist, and not been truthful when answering interrogatories (under penalty of perjury).

The situation has come to a head, for JetBlue has made it impossible for the Reyes family to have all the evidence necessary to prove its negligence. Moreover, it is impossible to even know what that evidence may be, since JetBlue is the only entity that has it, meaning that the Reyeses have no way of knowing whether the airline would be in compliance with any future orders. Therefore, the Reyes family is left with no choice but to seek the aid of this Honorable Court, and request that JetBlue's negligence be deemed established.

## II. Procedural Background

1. On September 27, 2011, the Reyes family served a set of *Interrogatories* and a set of *Requests for Production of Documents, Information, and Things Under Fed R. Civ. P. 34* upon JetBlue, to be answered within 30 days. See **Exhibits 1-2**.[2]
2. At JetBlue's asking, the Reyeses stipulated to several extensions of time, such that JetBlue responded to the discovery requests on December 2 and 5, 2011. See **Exhibits 3-4**.

[2] For the Court's convenience, the Reyeses attach an *Exhibit Master List* (**Appendix 1**).

3. Upon realizing that JetBlue's responses were wholly inadequate, the Reyes plaintiffs began a good-faith effort to resolve the discovery dispute, by sending JetBlue's counsel a detailed communication on December 7, 2011.

4. JetBlue delivered a response letter nearly two weeks later, on December 20, 2011.

5. Since JetBlue's letter was unsatisfactory and failed to address the Reyes family's concerns, they sent JetBlue a second detailed communication the next day, further explaining their positions, attaching supporting legal sources, and inviting JetBlue's lawyer to meet and confer personally.

6. On the plaintiffs' invitation, the undersigned and JetBlue's counsel personally met and conferred on December 28, 2011.

7. When such meeting failed to resolve the parties' differences, the Reyes family filed, on January 5, 2012, a *Motion to Compel Discovery* (Dkt. 38).

8. To avoid delaying the case, this Court ordered JetBlue to respond to the *Motion to Compel Discovery* on or before January 12, 2012. See Dkt. 41.

9. Since JetBlue had stated, in its initial discovery responses, that the "black box" or cockpit voice recorder (CVR) audio related to accident giving rise to this case did not exist, in apparent conflict with federal regulations, the Reyeses requested leave, on January 16, 2012, to serve JetBlue with two interrogatories and two requests for production of documents. See Dkt. 45.

10. This Court granted such leave on January 17, allowing JetBlue 15 days to answer the discovery requests. See Dkt. 47, and **Exhibits 5-6** (*Interrogatories* and *Requests for Production of Documents*).

11. The Court also granted a **final** extension of the discovery deadline, to March 9, 2012. See Dkt. 47.

12. On January 23, 2012, this Court granted the Reyes family's *Motion to Compel Discovery*. See Dkt. 48.

13. JetBlue responded to the "black box" interrogatories and requests for production of documents on February 6, 2012, the last day allowable by the Court's January 17, 2012 *Order*. See **Exhibits 7-8**.

14. Despite several follow-up communications from the Reyeses, JetBlue responded to their September 27, 2011 *Interrogatories* and *Requests for Production of Documents* on March 9, 2012, the last day of the discovery period. See **Exhibits 9-10**.

15. Nonetheless, and **nearly six months** after serving JetBlue with their discovery requests, the Reyeses have learned that the responses are incomplete, inadequate, and untruthful. Therefore, they are left with no choice but to again turn to this Honorable Court.

## III. Argumentation

A. JETBLUE DID NOT RESPOND ADEQUATELY TO THE DISCOVERY REQUESTS

As a threshold matter, JetBlue did not respond adequately to the discovery requests, despite being under this Court's *Order* to do so. See Dkt. 48 ("considering that the interrogatories in dispute are neither burdensome nor cumulative, the Court orders defendant to answer them in a complete and meaningful way") (emphasis added).

Particularly, regarding interrogatory 1 (see **Ex. 1** (*Interrogatories*)), JetBlue was asked to list and describe every incident where a JetBlue aircraft has had smoke in the cabin or cockpit, including the date and time of the incident, and the likely cause, if determined. Instead of providing a written answer, JetBlue delivered documents. Specifically, instead of a simple list, JetBlue produced a limited and disorganized jumble of technical, jargon-filled

papers, in violation of the Court's *Order* and Fed. R. Civ. P. 33[3]. See **Exhibits 1** (*Interrogatories*), **9** (*Responses to Interrogatories*), and **11** (document production in response to interrogatories).

Rule 33(d) does authorize a party to answer interrogatories by providing business records. However, it can only do so "….if the burden of deriving of ascertaining the answer **will be substantially the same for either party**…. [and] specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them **as readily as the responding party could**" (emphasis added).

In more detail, "a party that opts to produce business records in lieu of answering an interrogatory must specify the records in sufficient detail for the propounding party to locate and identify, as readily as can the responding party, the records from which the answer may be ascertained". 7-33 Claudia Wilken & Robert M. Bloom, Moore's Federal Practice – Civil, at § 33.105[3] (2012) (citations omitted). This means that, "to satisfy the specificity requirement, courts have held that the party from whom discovery is sought may have to list exact documents or even indicate the page or paragraphs that are responsive to the interrogatory". *Id.* (citations omitted) (emphasis added).

Moreover, "the specificity requirement is intended to guard against misuse of the option to produce business records. A responding party cannot abuse the option by making vague references to 'company files' or by directing the propounding party to a mass of undifferentiated records". *Id.* (citations omitted).

This has been clear since at least 1970, when the Rules Advisory Committee spoke about that year's Amendment to Rule 33: "the interrogating party is protected against abusive

3 JetBlue did send 9 separate e-mail attachments, each allegedly corresponding to an "ACM incident". Nonetheless, it provided no explanation whatsoever, did not organize the documents, and gave different kinds of documents for different alleged incidents. See **Ex. 11**.

use of this provision through the requirement that the burden of ascertaining the answer be substantially the same for both sides. **A respondent may not impose on an interrogating party a mass of records as to which research is feasible only for one familiar with the records**" (emphasis added). As a matter of fact, the Committee again wrote about the issue a decade later, and its 1980 Notes deal exclusively with the matter:

> The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by this subdivision. **Such practices are an abuse of the option. A party who is permitted by the terms of this subdivision to offer records for inspection in lieu of answering an interrogatory should offer them in a manner that permits the same direct and economical access that is available to the party. If the information sought exists in the form of compilations, abstracts or summaries then available to the responding party, those should be made available to the interrogating party. The final sentence is added to make it clear that a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived**.

(Emphasis added).

The federal courts have also been clear. See, for example, State of Colo. ex rel. Woodard v. Schmidt-Tiago Const. Co., 108 F.R.D. 731, 735 (D. Colo. 1985) ("the appropriate answer when documents are to be used is to list the specific document provided the other party and indicating the page or paragraphs that are responsive to the interrogatory") (citing Daiflon Inc. v. Allied Chemical Corp., 534 F.2d 221, 227 (10th Cir. 1976)); U.S. S.E.C. v. Elfindepan, S.A., 206 F.R.D. 574, 576 (M.D.N.C. 2002) ("....the producing party must show that the named documents contain all of the information requested by the interrogatories. Crucial to this inquiry is that the producing party have adequately and precisely specified for each interrogatory, the actual documents where information will be found. **Document dumps or vague references to documents do not suffice**") (emphasis added) (citation omitted);

Exxon Chem. Patents, Inc. v. Lubrizol Corp., 131 F.R.D. 668, 672 (S.D. Tex. 1990) ("….the responding party has a duty to specify by category and location, the records from which answers to interrogatories can be derived").

The same analysis applies to JetBlue's response to interrogatory 2, where the Reyes family requested a list and description of all incidents where air cycle machines malfunctioned in JetBlue aircraft, along with related information. See **Ex. 1** (*Interrogatories*). JetBlue responded via the same document dump allegedly responsive to the first interrogatory. See **Exhibits 9** (*Responses to Interrogatories*) and **11** (document production).

For interrogatories 1 and 2, then, JetBlue was asked for simple lists. Yet, it decided to flaunt this Court's *Order*, and respond with a mass of disorganized, incomprehensible, and jargon-laden documents. This should not be allowed.

Lastly, in response to the third interrogatory, which regards the procedure for emergency evacuations (including crew discretion as to the instructions given to passengers) JetBlue provided, in addition to other documentation, a page of its *Flight Operations Manual*. See **Exhibits 1** (*Interrogatories*) and **12** (*Flight Operations Manual* excerpt). Nonetheless, the page has a large "redacted" watermark, which leads to the Reyeses' objection that JetBlue did not provide any kind of explanation for the redaction. In other words, it did not explain what kind of information it redacted, or why. This is impermissible, for it is the party who answers an interrogatory that bears the burden of establishing its objection (particularly in this case, where JetBlue is under the Court's *Order* to fully respond). See Aponte-Navedo v. Nalco, 268 F.R.D. 31, 36 (D.P.R. 2010).[4]

---

4 The same analysis applies to page "12-18" of JetBlue's *Flight Attendant Manual* (**Ex. 13**).

B. THE EVIDENCE INDICATES THAT JETBLUE DID NOT RESPOND TRUTHFULLY TO THE DISCOVERY REQUESTS

The Reyes family hesitates to include this section in this *Motion*, since it is only very reluctantly that they have come to believe that JetBlue has been untruthful in answering the requested discovery[5]. Nonetheless, the Reyeses feel that the facts are clear, and must be presented to this Court.

Firstly, the Reyeses requested from JetBlue that it produce "any and all communications, **including e-mail**, from Hamilton Sundstrand and/or Embraer to JetBlue in any way related to the repair or maintenance of air cycle machines", as well as any like communications from JetBlue to such entities. See *Request for Production of Documents* (**Ex. 2**), at requests 20 and 21 (emphasis added). To both *Requests*, **JetBlue responded that** "**none exist**". See *Responses* (**Ex. 10**), at responses 20 and 21.

That is false. As the Court and JetBlue know, the Reyes family served the Hamilton Sundstand Corporation with a *subpoena duces tecum*. See, for example, *Informative Motion Regarding Subpoena Upon Hamilton Sundstrand* (Dkt. 39). **Hamilton Sundstrand eventually produced 75 bates-stamped e-mails received by JetBlue personnel, many of which specifically reference smoke-in-the-cabin incidents on board Embraer 190 airplanes caused by faulty air cycle machines bearing the same part number as the one that caused the accident object of this case**. See **Exhibits 14** (the e-mails) and **15** (a table organizing them by bates number)[6].

---

5 The Reyeses also clarify that they believe that JetBlue, not JetBlue's attorneys, has been untruthful. They have the utmost respect for such attorneys, and know them to be of the greatest integrity.

6 The only way that JetBlue's two-word response could be technically "true" (but still devious) is if it destroyed the e-mails and did not know that Hamilton Sundstrand kept them, in which case there would be a spoliation issue, and the remedies requested in this motion would still be warranted, even if JetBlue had destroyed the e-mails before the *Complaint* was filed. See, for example, Vélez v. Marriott PR Management, Inc., 590

In a second instance of untruthfulness, the smoke-in-the-cabin incidents "mentioned" by JetBlue in its document dump in response to interrogatories 1 and 2 (see **Exhibits 1** (*Interrogatories*) and **11** (document dump)) do not include at least two smoke-in-the-cabin incidents on board Embraer 190 aircraft.

The first incident apparently happened on or about July 21, 2008, and involved an Embraer 190 with registration number N203JB. It is evidenced by a Hamilton Sundstrand e-mail bates-stamped HSC0000010. See **Ex. 14** (message dated July 21, 2008, with the subject "N203JB, smoke in cabin, ACM [air cycle machine] pictures, part 2").

The second incident happened on August 31, 2009, on JetBlue flight 654, headed for Rochester, NY. It is evidenced by two separate news reports, from the New York Post (**Ex. 16**), and a website called Flightglobal.com (**Ex. 17**).

Apart from the above, there is a third instance of apparent untruthfulness. JetBlue was asked, in *Interrogatories* and *Requests for Production of Documents*, to explain what happened to the incident airplane cockpit voice recorder, or "black box" (see **Exhibits 5** and **6**). The Court ordered it to answer and produce the relevant documents. See Dkt. 47.

On February 22, 2012, JetBlue proffered its *Responses* (including objections, despite the Court's *Order*). In its *Responses* to the *Interrogatories* (**Ex. 7**), JetBlue's Air Safety Investigator, Doug Rease, stated, under penalty of perjury, that the Digital Voice Data Recorder (DVDR) audio "….was not downloaded and the DVDR remained on the aircraft, [so] the audio recording recorded over itself by new audio recordings after 2 hours of aircraft use". See **Ex. 7**, at response 2.

---

F.Supp.2d 235, 258-259 (D.P.R. 2008) (the obligation to preserve evidence "predates the filing of the complaint and arises once litigation is reasonably anticipated") (citations omitted).

Because of this, the Reyeses were extremely surprised when, in response to their *subpoena duces tecum*, Hamilton Sundstrand produced an e-mail string, dated March 7, 2010, referring to the accident object of this case, and **including Doug Rease as a recipient**, where Hamilton Sundstrand specifically comments that "**on-site JB [JetBlue] techs have advised....that the DVDR....data has been downloaded**". <u>See</u> **Ex. 14**, at bates numbers HSC0000072-HSC0000074 (emphasis added). This statement was not corrected or contradicted by any JetBlue personnel. <u>See</u> *id*.

It is true that the same e-mail states that such data was not "quarantined", which the Reyeses take to mean that JetBlue destroyed it. Nonetheless, the glaring discrepancy between Mr. Rease's statement (under penalty of perjury) and the e-mail is highly significant. At a minimum, it demonstrates that the data was downloaded in spite of Mr. Rease's statement to the contrary, and was important enough for JetBlue that it took the affirmative step of downloading it, instead of merely disregarding it.

This stands in direct opposition to Mr. Rease's statements, since his *Responses* to the *Interrogatories* emphasize that the accident was so insignificant that the data was not "at issue". <u>See</u> **Ex. 7**. In fact, the opposite seems true, since Mr. Rease actually flew to Puerto Rico to investigate the accident. <u>See</u> *id*.

Finally, although the above are the instances where the Reyes family has direct evidence of untruthfulness on the part of JetBlue, there are other discovery answers that are extremely suspicious, and where the facts point to skullduggery.

Particularly, regarding the accident object of this case, JetBlue produced documents such as a *Flight Crew Irregularity Report* (with a specific occurrence number, O634-10) (**Ex. 18**), and a memorandum detailing a preliminary safety investigation by James Swamback, JetBlue's Quality Assurance Auditor (**Ex. 19**). Such memo also references a specific "Q.A.

Investigation" number, 2010-A779. Nonetheless, regarding the other smoke-in-the-cabin incidents that JetBlue chose to disclose, it did not produce these documents. All it produced was the document dump, consisting fully of technical papers. See **Ex. 11**.

Therefore, the facts strongly indicate that documents such as Flight Crew Irregularity Reports and safety investigation memorandums exist for the other smoke-in-the-cabin incidents (both those that JetBlue did and did not disclose), and that they are prepared in the ordinary course of business (and, in fact, are assigned specific reference numbers).

Moreover, it should be presumed that the documents exist, per the Puerto Rico Evidence Rules' presumptions "that a person takes ordinary care of his own concerns", "that the ordinary course of business has been followed", and "that things have happened according to the ordinary course of nature and the ordinary habits of life". See Evidence Rule 304, 32 P.R. Laws Ann. Ap. VI, at subsections 4, 19, and 26[7]. See also Fed. Evid. Rules 302 (applying state law to presumptions in civil cases), and 301 ("in a civil case....the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption").

Finally, it should be noted that, in the past, this Court has shown no patience with attempts to have it believe the unbelievable. See, for example, Federal Deposit Ins. Corp. v. Francisco Inv. Corp., 638 F.Supp. 1216, 1219 (D.P.R. 1986) ("'we judges should not, after all, be so naive as to believe statements which no one else would believe'") (citing People v. Luciano, 83 P.R.R. 551, 561 (1961)); Dávila Rivera v. Caribbean Refrescos, Inc. 2004 WL 1925477 (D.P.R. 2004) ("certainly, 'judges are not fools required to believe what ordinary citizens do not accept'") (citations omitted).

---

7 The official translations provided are from the 1979 Evidence Rules, 32 P.R. Laws Ann. Ap. IV, whose presumptions were not substantially changed with the adoption of the 2009 Evidence Rules, for which an official translation does not appear to be available.

C. A SANCTION DEEMING MATTERS ESTABLISHED IS CALLED FOR

i. The Law Regarding the Sanction

The sanction of deeming facts established is codified in Fed. R. Civ. P. 37(b)(2)(A)(i), but has been on the books for over a century, harking to the case of Hammond Packing Co. v. State of Ark., 212 U.S. 322, 352 (1909), where the Supreme Court held that

> ....the general course of legislation and judicial decision in the several states indicates that it has always been assumed that the power existed to compel the giving of testimony or the production of books and papers by proper regulations prescribed by the legislative authority, and, for a failure to give or produce such evidence, the law might authorize a presumption in a proper case against the party refusing, justifying the rendering of a judgment by default, as if no answer had been filed.

See Advisory Committee's 1937 Notes on Rule 37 ("The provisions of this rule authorizing orders establishing facts or excluding evidence or striking pleadings, or authorizing judgments of dismissal or default, for refusal to answer questions or permit inspection or otherwise make discovery, are in accord with [Hammond]....").

The leading modern case on the sanction seems to be Chilcutt v. U.S., 4 F.3d 1313 (5th Cir. 1993), *cert. denied at* Means v. Chilcutt Wortham, 513 U.S. 979 (1994) (cited by Moore's, *supra*, at § 37.51[2], and, as to another topic, by U.S. v. Horn, 29 F.3d 754, 764 (1st Cir. 1994)).

Chilcutt was a Federal Tort Claims Act case, due to a person's slip-and-fall accident at a post office. Because of the Government's discovery abuse, the District Court deemed liability established, and the Fifth Circuit affirmed.

In Chilcutt, as in this case, the defendant consistently informed the plaintiff that it intended to make a requested production, only to never comply. See *id.*, at pg. 1316 ("during each discussion, [defense counsel] informed [the plaintiff's counsel] that....the answers were forthcoming. In reality, the answers were not forthcoming...."); **Ex. 20** (correspondence between the undersigned and the attorneys for JetBlue).

Another similarity between Chilcutt and this case is that in both instances the defendants repeatedly made incomplete productions. See *id.*, at pgs. 1316-1317; **Exhibits 3-4**, **7-13**, and **18**. Also, the both the US Government and JetBlue have refused to produce documents which regard prior similar accidents and which are known to exist. See *id.*, at pgs. 1318-1319 (regarding an accident log, "....although the Government and the people working on the case knew that the log existed....the Government chose to withhold the documents in derogation of the discovery rules and the court's order compelling discovery"); **Exhibits 9-11**, **14**, and **17-20**.

In making its analysis, the Fifth Circuit was clear in that "....**deeming the establishment of certain facts is one of the least harsh sanctions available to courts under Rule 37(b). Indeed, it is only more severe than the granting of expenses and attorneys' fees**". *Id.*, at pg. 1320 (emphasis added).

Moreover, the appellate court reviewed the District Court's actions under the rubric of Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982), a case where the defendants did not cooperate in jurisdictional discovery. Therefore, the District Court deemed personal jurisdiction established, and the Supreme Court affirmed.

In such affirmance, the Supreme Court established that "....decisions to impose sanctions under Rule 37(b) must be guided by two important considerations: The sanction must first of all be just, and it must 'specifically relate[] to the particular 'claim' which was at issue in the order to provide discovery'". Chilcutt, at pgs. 1320-1321 (citing Ins. Corp. of Ireland). The Chilcutt Court adopted these standards, and added a third, that "....the sanction meet the Rule 37 goals of punishing the party which has obstructed discovery and deterring others who would otherwise be inclined to pursue similar behavior". *Id.*, at pg. 1321.

ii. The *Chilcutt* and *Ins. Corp. of Ireland* Factors are Present Here

*a. The Sanction Would be Just and Fair*

One of the first factors to consider in determining whether the sanction is fair is whether the defendant had prior warning. See Chilcutt, at pgs. 1321-1322. In this case, JetBlue had plenty.

The first came with this Court's *Case Management Order*, which was served upon it almost a year ago, on April 26, 2011 (Dkt. 16). There, in the first two paragraphs, this Court was crystal-clear in that it would not tolerate needless delays:

> Under Rule 16 of the Federal Rules of Civil Procedure, as amended, the Court is required to schedule and plan the course of litigation in order to achieve a just, speedy, and inexpensive determination of the action. **Justice delayed is justice denied**. Delay devalues judgments, creates anxiety in litigants, and results in loss or deterioration of the evidence upon which rights are determined. Accumulated delay produces backlogs that waste court resources, needlessly increases lawyer fees, and creates confusion and conflict in the allocation of a judge's time.
>
> The public expects and deserves prompt and affordable justice. **Delay signals a failure of justice** and subjects the court system to public criticism and a loss of confidence in its fairness and utility as public institution. As the steward of public trust in our legal system, the court system is obliged to dispose of court business without delay. **To do less is to compromise justice**.

(Emphasis added).

Nonetheless, this case has already been delayed multiple times, particularly since JetBlue has still not properly answered the September 27, 2011 *Interrogatories* and *Requests for Production of Documents* (**Exhibits 1** and **2**), and this Court has already extended the discovery deadline **four times** from its original date of August 26, 2011. See Dkts. 16, 28, 34, and 47. The last extension was due exclusively to JetBlue's noncompliance with its discovery obligations, and was a final extension, per the Court's *Order*.

JetBlue' second warning comes from the Federal Rules of Civil Procedure themselves. JetBlue is not a *pro se* litigant. It is represented by some of the most capable attorneys in Puerto Rico, and has in-house counsel, such that it has always been fully aware of its discovery obligations. Particularly, the airline has always known of the information in its hands, yet has consistently refused to produce it, and has, worse yet, been untruthful about it.

JetBlue's third warning comes from the case docket. Not only was it served with the *subpoena duces tecum* before it was delivered to Hamilton Sundstrand, but the Reyes family filed two informative motions about it. See Dkts. 39 and 46. Therefore, the airline was fully aware that Hamilton Sundstrand was going to produce its communications with JetBlue and yet still chose to inaccurately claim that they do not exist. See **Exhibits 9-11**, and **14**.

JetBlue's fourth warning comes from this Court's two *Orders* compelling it to produce documents and answer interrogatories. See Dkts. 47 and 48. On both occasions, JetBlue chose to respond to the *Orders* on the last possible day to do so, and did so by violating both *Orders* (under penalty of perjury). See **Exhibits 8-14**, and **16-17**.

In a related vein, and within its justice-and-fairness analysis, the Fifth Circuit also considered the defendant's empty promises. *Id.*, at pgs. 1321-1322 (each time the parties spoke, the Government "....promised that the answers would be forthcoming....without a doubt, these promises strung [the plaintiff's attorney] along, causing her to incorrectly believe that seeking an order compelling discovery or moving for Rule 37 sanctions was unnecessary". Moreover, "....the Government's unfulfilled promises....support the district court's decision to impose sanctions").

In this case, JetBlue also made empty promises and strung the Reyes family along. See **Ex. 20** (correspondence between the undersigned and counsel for JetBlue).

*b. JetBlue was, and Continues to be, Intentionally Untruthful*

In Chilcutt, the Court was clear in that willful misconduct justifies severe sanctions:

> ....the credible evidence in the record of this case reveals quite readily that the Government not only intentionally withheld documents that it knew existed, but it also knowingly made blatant misrepresentations to the district court about the existence of those documents. **Such conduct, in our view is patently willful and contumacious**. **Indeed, the district court considered Mr. Means'** [the AUSA] **behavior to be so willful and contumacious that it seriously considered disbarring Mr. Means and holding him in criminal contempt. The punishment meted out here clearly fit the conduct involved**.

*Id.*, at pgs. 1322-1323.

Likewise, in this case and as discussed above, JetBlue has, on repeated occasions, not been candid with the Reyeses or this Court. See **Exhibits 1-19**.

*c. The Sanction Requested is Related to the Claim Sought to be Proved by Discovery*

That the sanction requested is related to the claim sought to be proved by discovery is a very important factor to consider. See Chilcutt, at pg. 1324. In fact, in that case, the Court specifically held that the Government's failure to provide discovery as to **prior similar incidents** impeded the plaintiffs from prosecuting their case: "had the Government properly responded....the plaintiffs would have been able to investigate those accidents and would likely have strengthened their liability allegations against the Government. Obviously, the Government's misconduct precluded that from happening".

That is also the case here, since nearly all of the discovery sought, and illegally denied by JetBlue, relates to the numerous smoke-in-the-cabin incidents that occurred on Embraer 190 aircraft before the accident giving rise to this case. By preventing the Reyeses from adequately investigating those incidents, it is severely hampering their ability to prove that their accident was foreseeable. See, e.g., Coyne v. Taber Partners, 53 F.3d 454, 459-460 (1st

Cir. 1995) ("'for [a] causal relation to exist the damage must have been foreseeable and avoidable had the omitted action been timely taken'....**foreseeability serves as the 'linchpin' for establishing tort liability under Puerto Rico law**") (citations omitted) (emphasis added); Woods-Leber v. Hyatt Hotels of Puerto Rico, 951 F.Supp. 1028, 1038 (D.P.R. 1996), *affirmed by* Woods-Leber v. Hyatt Hotels of Puerto Rico, 124 F.3d 47 (1st Cir. 1997) ("**the main way to demonstrate foreseeability is to point to similar incidents in the past that the defendant knew or should have known about**....as a general matter, whether or not an incident of the same type as the one causing the injury had occurred before will be significantly probative of that type of event's foreseeability").

Moreover, the Fifth Circuit explained that, under these circumstances, there is a presumption that the hidden information would be very prejudicial to the hider: "when parties present no valid objections to discovery and intentionally withhold properly requested information, courts have the authority to presume that the party's refusal to produce the information 'is an admission of the want of merit in the asserted defense'". Chilcutt, at pg. 1324 (citing Hammond, 212 U.S. at pg. 351). See also Puerto Rico Evidence Rule 304(5), 32 P.R. Laws Ann. Ap. VI ("that evidence willfully suppressed would be adverse if produced")[8]. In fact, the Chilcutt Court used the presumption against the Government "....we believe that the district court was well within its discretion to presume, for the purposes of this case, that the plaintiffs' liability claims were established". *Id.*, at pg. 1324.

8 Official translation from the 1979 Evidence Rules, 32 P.R. Laws Ann. Ap. IV.

iii. The Sanction Would be the Most Lenient Sanction that is Appropriate

*a. The Requested Sanction Would be a Very Lenient One*

As the Fifth Circuit emphasized, "....deeming the establishment of certain facts is one of the least harsh sanctions available to courts under Rule 37(b). Indeed, it is only more severe than the granting of expenses and attorneys' fees". Chilcutt, at pg. 1320 (emphasis added).

In fact, and in contrast to what the Reyes family is requesting, the District Court in Chilcutt believed that a full default judgment, on all elements of the plaintiff's cause of action (including damages), was warranted. *Id.*, at pg. 1319. The Fifth Circuit agreed. Nonetheless, the District Court chose to be lenient, and "....decided instead **merely** to deem that the *prima facie* elements of the plaintiffs' liability claim were established for the purposes of the case. The court allowed the Government to present evidence of its affirmative defenses and required the plaintiffs to prove damages". *Id.* (emphasis added). In fact, the District Court (with the Fifth Circuit's subsequent blessing) went even further, and severely sanctioned the Assistant US Attorney on the case, and "....held a hearing to determine whether it should hold [him] in criminal contempt of court and bar him from practicing before the Northern District of Texas". *Id.*

Further, as in Chilcutt, if the Court granted the sanction requested herein, JetBlue would remain free to challenge all aspects of the Reyeses' case, except liability. That is to say, **it could still allege that the Reyeses' damages were not caused by the emergency evacuation, as its expert witness, Dr. Grovas, has stated**[9]. See Chilcutt, at pg. 1320 ("because the court's ruling did not preclude the Government from presenting its case in chief,

9 The Reyeses reserve the right to fully challenge Dr. Grovas's testimony, report, and conclusions.

**the sanction was a far cry from default judgment**....[also,] the court require[d] [the plaintiff] to prove damages....") (emphasis added).

### b. *Any Other Sanction Would Unfairly Delay the Case and Unfairly Prejudice the Reyeses*

As this Court clearly stated in its *Case Management Order* (Dkt. 16), delay "....signals a failure of justice and subjects the court system to public criticism and a loss of confidence in its fairness and utility as public institution".

This Court has already extended the discovery deadline **four times** from its original date of August 26, 2011. See Dkts. 16, 28, 34, 47. The last extension was due exclusively to JetBlue's noncompliance with its discovery obligations, and was a final extension, per the Court's *Order*.

To sanction JetBlue in a way other than that which the Reyeses respectfully request would mean a **fifth** extension of the discovery deadline. It would also mean a long extension, since, upon receiving Hamilton Sundstrand's production, and JetBlue's limited production, it has become clear to the Reyes family that it would have to request leave to hire an expert to examine the documents. That is to say, the documents produced are highly technical and beyond lay understanding, such that an expert would have to examine and interpret them. See Fed. Evid. Rule 702.

The Reyeses most respectfully posit that this would not be a fair situation, since they could have made this determination in late October of 2011, when the discovery was initially due. See **Exhibits 1** and **2** (*Interrogatories* and *Requests for Production of Documents* served on September 27, 2011). Nonetheless, it is late March of 2012, and JetBlue has still not complied with its legal obligations. See Chilcutt, at pg. 1324 ("....this Court will not require a

district court to inconvenience itself by rearranging its calendar to accommodate a malefactor who has violated its discovery obligations"). Also, and most importantly, **no expert would ever be assured that he examined all of the available documents, since JetBlue has not been truthful in producing them (despite this Court's *Orders*), and there is no guarantee that it would be truthful in the future**.

In this regard, the problem with lesser measures is that, unlike in Chilcutt, the plaintiffs in this case have no idea, and no way of knowing, what the full range of JetBlue's documentation on their accident, as well as prior similar incidents, consists of. That is to say, if they knew the identity of the specific documents and information that JetBlue has but refuses to produce, the Court could craft sanctions to coerce JetBlue into producing them. But, since this is something that only JetBlue knows, and has repeatedly shown it is willing to be untruthful about, there is no way of knowing the truth. Therefore, the only way to remedy JetBlue's Court *Order* violations is to deem liability established.

## V. Conclusion

On September 27, 2011, the Reyes family served JetBlue with simple discovery requests. Almost six months and two Court *Orders* later, the Reyeses still lack candid, straightforward answers. JetBlue has had more than enough chances to comply with its obligations, but has imperiously refused to do so at every turn. It is now time to put an end to this issue.

The Reyeses seek this closure via the most lenient measure possible. In fact, in the past, this Court has gone so far as to render a full default judgment for discovery abuse. See Century ML-Cable Corp. v. Carrillo, 43 F. Supp. 2d 176, 185 (D.P.R. 1998) (Pérez-Giménez, J.) ("'it is not the Court's function to drag a party kicking and screaming through discovery. That is what

the defendant required in this case and such conduct must be deterred if the courts are to perform their intended functions'") (citations omitted).

As in that case, in this case JetBlue's violation of this Court's *Orders*, coupled with its pattern of untruthfulness, has made it impossible for the Reyes family to fairly prepare its case (as to all aspects but damages). This is because JetBlue has not provided the discovery this Court ordered it to provide, and has shown that it cannot be trusted to frankly answer discovery requests. Therefore, there is no indication that further orders or lesser measures would be effective, since JetBlue is the sole custodian of the requested information, and is the only entity that knows whether it fully complied with a Court order.

Consequently, the Reyes family respectfully maintains that the most fair and effective measure would be for the Court to deem JetBlue's liability established under Rule 37(b)(2)(A). Therefore, it would be concluded that if the Reyeses suffered any damages upon deplaning, it was due to JetBlue's negligence. Thus, the Reyes family requests that the Court set a damages-only trial, where they will demonstrate that they suffered damages upon deplaning, as well as the extent of such damages.

WHEREFORE, the Reyes family respectfully requests that the Court deem JetBlue's negligence established for the remainder of this case. Therefore, it would be established that, if the Reyes plaintiffs suffered any injuries upon their evacuation of JetBlue Flight 1762 on March 6, 2010, it was because of JetBlue's negligence.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 28th day of March, 2012.

**I HEREBY CERTIFY:** That on this same date the foregoing motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

s/Jorge Miguel Suro Ballester
JORGE MIGUEL SURO BALLESTER
USDC-PR 121713
Email: jm@surolawoffice.com

s/Miguel A. Suro Carrasco
MIGUEL A. SURO CARRASCO
USDC-PR 227807
Email: masc@surolawoffice.com

**Suro & Suro**
Attorneys for the plaintiffs
1225 Ponce de León Ave., PH-2
San Juan, PR 00907-3921
Tels. (787) 724-5522/5542
Fax. (787) 722-7711