**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Carlos Reyes Santiago, Edna Santiago Sánchez, Carlos Reyes Pagán and the conjugal partnership of Edna Santiago Sánchez and Carlos Reyes Pagán,<br><br>Plaintiffs,<br><br>v.<br><br>JetBlue Airways Corporation,<br><br>Defendant. | Civil No. 11-1205 (SEC)<br><br>Plaintiffs demand trial by jury |

**SECOND MOTION TO DEEM LIABILITY ESTABLISHED DUE TO NEW VIOLATIONS OF DISCOVERY ORDERS**

**TO THE HONORABLE SALVADOR E. CASELLAS:**

COME NOW the plaintiffs, through their undersigned attorneys, and respectfully state and pray as follows:

## I. Introduction

If, as the First Circuit has made clear, violation of one Court order constitutes "extreme misconduct"[1], violation of two orders, coupled with probable perjury, is far graver. Yet, this is what JetBlue has done, making it impossible for the Reyes family to discover all of the evidence available to prove the airline's negligence, which caused their flight to fill up with smoke on the night of March 6, 2010.

This Court has already determined that JetBlue was untruthful, acted in bad faith, and wasted its time and resources when it violated an *Order* compelling disclosure. Therefore, it sanctioned the airline, and issued a second *Order* for disclosure. Nonetheless, as new facts

---

1 Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002).

establish, JetBlue again tossed aside the Court's *Order*, and still refuses to comply with its discovery obligations.

Under this reality, the Reyeses strongly believe that they will never receive full discovery from JetBlue. Therefore, they most respectfully present the new facts to this Honorable Court, and pray that it deem liability established.

## II. Background

1. On September 27, 2011, the Reyes family served a set of *Interrogatories* and a set of *Requests for Production of Documents, Information, and Things Under Fed R. Civ. P. 34* upon JetBlue, to be answered within 30 days. See **Exhibits 1** and **2**.

2. Since JetBlue's responses were inadequate and incomplete, the parties met to attempt to resolve the matter in good faith.

3. When such meeting failed to resolve the parties' differences, the Reyes family filed, on January 5, 2012, a *Motion to Compel Discovery* (Dkt. 38).

4. On January 23, 2012, this Court granted such *Motion to Compel*. See Dkt. 48.

5. Under this Court's *Order*, JetBlue served new discovery responses on the Reyeses on March 9, 2012.

6. Since the new responses were, again, inadequate and incomplete, the Reyeses filed a *Motion to Deem Matters Established due to Violation of Discovery Orders* on March 28, 2012. See Dkt. 52. Such *Motion* is hereby incorporated by reference.

7. The Court set, for April 18, 2012, a status conference where the *Motion to Deem Matters Established* would be discussed. See Dkt. 54.

8. During the April 18 status conference, the Court made it clear that it gave "**serious consideration** to plaintiffs' accusations regarding defendant's failure to conduct discovery in a good faith manner" (emphasis in original). As well, "the Court stated that some of defendant's answers have not been meaningful and truthful". See *Minutes*, at Dkt. 59. It also ordered JetBlue to provide the missing discovery. *Id.*

9. On April 30, 2012, the Court sanctioned JetBlue by ordering it to pay the Reyes family attorney's fees. It noted that it was sanctioning JetBlue "for its failure to conduct discovery in a good faith manner, and for wasting this Court's limited time and resources in resolving this unnecessary dispute". See Dkt. 60.

10. On April 27, 2012, JetBlue provided the Reyeses with some additional discovery. Nonetheless, it is still inadequate and incomplete, and showcases further untruthfulness on the part of JetBlue. The airline, therefore, made it necessary to file this motion, most respectfully requesting that JetBlue's liability be deemed established[2].

## III. New Court Order and Federal Law Violations

The Reyes family has identified numerous new violations of the Court's second *Order* compelling disclosure (see *Minutes*, at Dkt. 59). It has also uncovered, via new evidence, additional violations of the original *Order* compelling disclosure (Dkt. 48). They are the following:

[2] Contrary to that asserted in JetBlue's *Opposition to Plaintiffs' Motion to Deem Liability Established* (Dkt. 57), no meet-and-confer is required prior to the filing of this motion. See 7-37 Wayne D. Brazil, Moore's Federal Practice – Civil, at § 37.40 (2012) ("....there is no requirement in Rule 37(b) that a party try to secure the discovery through negotiations before filing a motion for sanctions. The requirement that a court already have ordered the discovery obviates the need for the meet and confer").

1. The April 18, 2012 status conference *Minutes* are clear in that JetBlue was ordered to provide, for all prior smoke, smell, or fumes accidents, its "**investigative reports**". Dkt. 59, at pg. 1 (emphasis added). Nonetheless, JetBlue did not comply with the Court's *Order*, even though it admitted, both during the status conference and in its *Opposition to Plaintiffs' Motion to Deem Liability Established*, that the documents exist. See Dkt. 57, at pgs. 18-19 (refusing to produce the reports because they are, allegedly, irrelevant, as well as otherwise objectionable).

The most astonishing example of JetBlue's new noncompliance stems from a smoke-in-the-cabin accident that took place on April 23, 2007. See **Ex. 3** (*Service Difficulty Report* and other papers). From the produced documents, it is clear that the incident happened aboard an Embraer 190 aircraft, and was caused by an air cycle machine with the same part number as the one that caused the accident object of this case. See **Ex. 3**, at pg. 1.

JetBlue produced the *Flight Crew Irregularity Report* for the accident. **Ex. 3**, at pgs. 4-5. Nonetheless, as the Court will notice, such *Report* states, on its last page and under the section titled "Safety Use Only", that a "**Full Investigation**" was required (emphasis added). Yet, being under the Court's *Order* to produce all "investigative reports", **JetBlue produced no investigative report or papers for this accident**.

This repeats itself several times over:

a. For a June 5, 2007 burning smell incident (caused by an air cycle machine) on an Embraer 190, JetBlue did not produce an assessment report or papers, although the *Flight Crew Irregularity Report* specifically states that an "assessment" was the prescribed course of action. **Ex. 4**, at pg. 8. This contrasts to other *Flight Crew Irregularity Reports* that state that an incident was to be "logged for statistics" only. See, for example, **Ex. 5**, at pg. 6.

b. For a September 19, 2006 smoke-in-the-cabin incident aboard an Embraer 190 (caused by a faulty air cycle machine), JetBlue produced an *Event Report* that also states that an "assessment" was the prescribed course of action, but the airline produced no assessment report. **Ex. 6**, at pg. 11.

c. For a November 26, 2007 smoke-in-the-cabin incident aboard an Embraer 190 (caused by a contaminated air cycle machine), JetBlue produced a *Flight Crew Irregularity Report* that also states that an "assessment" was the prescribed course of action, but the airline produced no assessment report, in spite of the fact that the accident was classified as being of "major" severity. **Ex. 7**, at pgs. 13-14.

d. For a July 6, 2008 smoke-in-the-cabin incident aboard an Embraer 190 (caused by a contaminated air cycle machine), JetBlue produced a *Flight Crew Irregularity Report* that also states that an "assessment" was the prescribed course of action, but JetBlue produced no assessment report, in spite of the fact that the accident was classified as being of "major" severity. **Ex. 8**, at pgs. 6-7.

The facts indicate that the missing assessments are discrete actions that are performed by distinct JetBlue personnel. This is clear from all of the cited *Reports* themselves, which have a specific space to list the person tasked with the assessment. See, for example, the November 26, 2007 *Report*, which states that the assessment is "open", and currently "unassigned". **Ex. 7**, at pg. 14. As well, it is evident that the assessments result in paperwork because, if they did not, how would JetBlue ever know when they were done, or keep track of them?

2. In another instance of new noncompliance, it is worth much notice that JetBlue's *Flight Crew Irregularity Reports* specifically reference "Weekly Safety Reports".

See, for example, the November 26, 2007 *Report*, which states the accident was to be a "new item" in the *Weekly Safety Report*. **Ex.** 7, at pg. 13. Nonetheless, **JetBlue produced no *Weekly Safety Reports*** (not even reports redacted to exclude non-smoke, smell or fumes incidents).

3. Turning to newly discovered disregard of the first *Order* compelling discovery, it is a fact that JetBlue responded to such *Order* by disclosing just **two** smoke-in-the-cabin instances, occurring on November 12, 2008, and April 14, 2009. By independent investigation, the Reyes family discovered two additional incidents, from July 21, 2008, and August 31, 2009. See the *Motion to Deem Matters Established* (Dkt. 52).

When the Reyeses pointed this out to the Court (see *id.*), JetBlue admitted that the undisclosed incidents took place, but stated that it had not mentioned the first because of "errors", while the second was not caused by an air cycle machine (a claim that the Reyeses will never be able to verify, since JetBlue never produced any related documentation). See the *Opposition to Plaintiffs' Motion to Deem Liability Established* (Dkt. 57), at pgs. 16-18. Therefore, it admitted that it left out, under penalty of perjury, half of the smoke-in-the-cabin incidents.

New evidence reveals a far worse reality, since **JetBlue has now admitted the existence of the many entirely new incidents, which it never revealed before, even though it was under this Court's *Order* to do so**.

For the Court's convenience, a table displaying all such incidents follows. It includes only incidents never before revealed, and excludes the July 21, 2008 accident that was not initially disclosed by JetBlue, but discovered upon independent investigation by the Reyes family.

| | Incident Type | Incident Date | Aircraft No. | Disclosed before? |
|---|---|---|---|---|
| 1 | Smoke in the cabin | September 19, 2006 | N197JB | **Never mentioned before.** |
| 2 | Smoke in the cockpit | April 23, 2007 | N267JB | **Never mentioned before.** |
| 3 | Smoke in the cabin. | June 5, 2007 | N179JB | **Never mentioned before.** |
| 4 | Smoke in the cabin. | August 20, 2007 | N198JB | **Never mentioned before.** |
| 5 | Smoke/fumes/haze in the cabin and cockpit. | November 26, 2007 | N178JB | **Never mentioned before.** |
| 6 | Smoke in the cabin. | July 6, 2008 | N239JB | **Never mentioned before.** |
| 7 | Burning odor. | August 4, 2009 | N206JB | Mentioned it in document dump (see **Ex. 9,** at pg. 16), but **did not mention it in list (see Ex. 10), and did not provide any documentation.** |
| 8 | Smoke in the cabin. | October 3, 2009 | N187JB | **Never mentioned before.** |

The truth, then, is that JetBlue, under this Court's *Order*, only mentioned two incidents. The Reyeses thought that the total number was four, because they discovered two more by their independent investigation. Nonetheless, it has now been revealed that there were -that we know of- **ten**[3] smoke-in-the-cabin incidents aboard Embraer 190 aircraft before

3 Seven incidents that were never mentioned before, plus the two incidents mentioned in the document dump (November 12, 2008 and April 14, 2009), plus the one incident discovered by the Reyeses (July 21, 2008). The August 31, 2009 incident is excluded because JetBlue claims it was not caused by air cycle machines (see Dkt. 57, at pgs. 17-18).

the Reyeses' accident. Therefore, under the Court's *Order*, JetBlue revealed **two of ten incidents**. It seems extremely difficult to say that this did not cross the line into perjury[4].

4. When JetBlue made its document production under this Court's first *Order* compelling discovery, it produced a page of its *Flight Operations Manual* ("FOM") with a large "redacted" watermark. See **Ex. 11**. Then, when the Reyeses protested that the airline did not explain the redaction, it stated that "JetBlue inserted the 'redacted' watermark in the FOM produced to remove the section on 'JetBlue representative at Scene of Aircraft Accident' which is not germane to this case because the event did not qualify as an accident....the 'redacted' watermark was inserted in the FAM and FOM to prevent irrelevant information from being disclosed in this litigation". See JetBlue's *Opposition to Plaintiffs' Motion to Deem Liability Established* (Dkt. 57), at pg. 9.

When the undersigned again requested that JetBlue produce the unredacted *Flight Operations Manual* during the April 18, 2012 status conference, the airline's attorneys again protested to the presiding Judge, saying that there had been no accident and that the information was irrelevant. The Court then overruled such objections, and ordered the unredacted document produced. See *Minutes*, at Dkt. 59.

When JetBlue finally produced the unredacted text, its first sentence reads: "the senior person (Captain, First Officer, etc.) at the scene of the aircraft accident **must ensure: Customers and Crew have <u>all possible assistance</u> to protect them from death or injury**" (emphasis added). **Ex. 12**.

With this new revelation, it is incredible that JetBlue told this Court that the redacted information is irrelevant, when the fact is that plaintiff Carlos Reyes Santiago specifically

---

4 It also raises eyebrows that, as it has now been revealed, JetBlue keeps statistics of those incidents (see **Ex. 5**, at pg. 6 (*Flight Crew Irregularity Report* stating that an incident was to be "logged for statistics")). Did JetBlue not consult its own statistics when it first answered?

stated, during his August 2, 2011 deposition, that no one assisted him when he jumped out of the airplane. He was left, alone and afraid to die, to jump out of a smoke-filled airplane in the dead of night. See **Ex. 13**, especially at pgs. 12-15 (internal pgs. 71-74) ("**Q:** Ok. Did you receive any instructions from the flight attendant on how to exit the plane? **A:** No.... **Q:** And you're saying you did not receive any instruction on how to jump [out of] the plane because there was nobody there when you jumped. **A:** Correct.... [then, after hitting the ground,] **Q:** Ok, you got up with your hands, or did somebody help you up? **A:** With my hands. There wasn't anybody down there").

Also, and as is known to the Court, one of the Reyeses' allegations (which, per Fed. R. Civ. P. 8(e), "must be construed so as to do justice") is that "JetBlue negligently and carelessly trained, instructed and supervised its employees with respect to the inspection, service, operation and maintenance of the aircraft used for Flight 1762". *Complaint* (Dkt. 1), at ¶ 10. As well, the family specifically alleged that

> When the aircraft finally landed in San Juan, some of the passengers began to scream, as all hell broke loose. Plaintiffs Reyes Santiago, Santiago Sánchez and Reyes Pagán, were the last, if not one of the last passengers, to deplane. The situation on the ground was also chaotic. From the time when they first became aware of the smell of smoke until the time when they finally departed the area of the runway after exiting the aircraft, plaintiffs continually feared for their lives and well-being. Furthermore, plaintiffs Reyes Santiago and Santiago Sánchez were seriously injured during the process of exiting the aircraft using the evacuation slides.

*Id.*, at ¶ 15.

The established facts, therefore, are that JetBlue told this Court, both in writing and face-to-face, that the *Manual* is irrelevant, when it clearly is anything but.

5. Apart from the above, it is also very revealing that, since at least 2006, JetBlue, which is entrusted daily with thousands of lives, has publicly admitted to having reliability problems with its Embraer 190 fleet. See JetBlue's 2006 Form 10-K filing (**Ex. 14**, at pg. 27):

> Acquisition of a new type of aircraft, such as the EMBRAER 190, which we initially placed into revenue service in November 2005, involves a variety of risks relating to its ability to be successfully placed into service, including delays in meeting the agreed upon delivery schedule and the inability of the aircraft and all of its components to comply with agreed upon specifications and performance standards. **We have experienced and may continue to experience lower reliability than we expect in our operation of this aircraft**. If we fail to successfully take delivery of and operate reliably the new EMBRAER 190 aircraft, our business could be harmed.

(Emphasis added).

Bearing this in mind, it is extremely odd (to not say unbelievable) that, from November 2005 to March 6, 2010 (the day of the accident object of this case), such reliability problems have produced as little documentation as JetBlue has disclosed.

It also goes against the applicable evidentiary presumptions, as the Puerto Rico Evidence Rules mandate that it be assumed "that a person takes ordinary care of his own concerns", "that the ordinary course of business has been followed", and "that things have happened according to the ordinary course of nature and the ordinary habits of life". See Evidence Rule 304, 32 P.R. Laws Ann. Ap. VI, at subsections 4, 19, and 26[5]. See also Fed. Evid. Rules 302 (applying state law to presumptions in civil cases), and 301 ("in a civil case....the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption").

It should also be noted that, in the past, this Court has shown no patience with attempts to have it believe the unbelievable. See, for example, Federal Deposit Ins. Corp. v. Francisco Inv. Corp., 638 F.Supp. 1216, 1219 (D.P.R. 1986) ("'we judges should not, after all, be so naive as to believe statements which no one else would believe'") (citing People v. Luciano, 83 P.R.R. 551, 561 (1961)); Dávila Rivera v. Caribbean Refrescos, Inc. 2004 WL

---

5 The official translations provided are from the 1979 Evidence Rules, 32 P.R. Laws Ann. Ap. IV, whose presumptions were not substantially changed with the adoption of the 2009 Evidence Rules, for which an official translation does not appear to be available.

1925477 (D.P.R. 2004) ("certainly, 'judges are not fools required to believe what ordinary citizens do not accept'") (citations omitted).

## IV. Conclusion

As the facts establish, JetBlue has been untruthful many times over, in violation of two Court *Orders* and, probably, federal perjury laws. It has also misstated the relevance of documents to this Court.

It has become clear, as well, that the Reyes family will never obtain complete discovery from JetBlue. Under these circumstances, the Reyeses are at a permanent, unfair, and illicit disadvantage in terms of proving JetBlue's liability. Furthermore, as this Court has stated, "examples of extreme misconduct include: defiance of court orders or ignoring warnings. The typical aggravating circumstance is a 'wasteful expenditure of the court's time'. '[D]isobedience of court orders is inimical to the orderly administration of justice and, in and of itself, can constitute extreme misconduct'". Roman-Samot v. Pontifical Catholic Univ. of Puerto Rico, 2011 WL 6382518 (D.P.R. 2011) (Casellas, J.) (citations omitted).

In light of the above, and most respectfully, the Reyes family posits that the fairest course of action is that this Honorable Court deem liability established, per Fed. R. Civ. P. 37(b)(2)(A)(i). It would not only be an appropriate sanction due to the nature of JetBlue's misconduct, but it would also be the sanction meant to follow an award of attorney's fees, which, in this case, did not persuade JetBlue to comply with this Court's orders. See Chilcutt v. U.S., 4 F.3d 1313, 1320 (5th Cir. 1993), *cert. denied at* Means v. Chilcutt Wortham, 513 U.S. 979 (1994) ("....deeming the establishment of certain facts is one of the least harsh sanctions available to courts under Rule 37(b). Indeed, it is only more severe than the granting of expenses and attorneys' fees").

WHEREFORE, the Reyes family most respectfully requests that the Court deem JetBlue's negligence established for the remainder of this case. Therefore, it would be established that, if the Reyes plaintiffs suffered any injuries upon their evacuation of JetBlue Flight 1762 on March 6, 2010, it was because of JetBlue's negligence.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 4th day of May, 2012.

**I HEREBY CERTIFY:** That on this same date the foregoing motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

s/Jorge Miguel Suro Ballester
JORGE MIGUEL SURO BALLESTER
USDC-PR 121713
Email: jm@surolawoffice.com

s/Miguel A. Suro Carrasco
MIGUEL A. SURO CARRASCO
USDC-PR 227807
Email: masc@surolawoffice.com

**Suro & Suro**
Attorneys for the plaintiffs
1225 Ponce de León Ave., PH-2
San Juan, PR 00907-3921
Tels. (787) 724-5522/5542
Fax. (787) 722-7711