IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS REYES-SANTIAGO, ET AL.,

Plaintiffs,

v.

JETBLUE AIRWAYS CORPORATION,

Defendant.

Civil No. 11-1205 (SEC)

**OPINION AND ORDER**

Before the Court are the plaintiffs' second motion for sanctions (Docket # 62), the defendant's opposition thereto (Docket # 74), and the parties' respective replies (Docket # 80 & 85). After reviewing the filings and the applicable law, the plaintiffs' motion is **GRANTED**.[1]

**Factual and Procedural Background**

On the morning of March 6, 2010, JetBlue Airways Corporation's ("JetBlue") Flight 1762 performed an emergency landing and evacuation due to haze, fumes and smoke in the cockpit and cabin. Carlos Reyes Santiago and his wife, Edna Santiago Sánchez (collectively, "Plaintiffs") were allegedly "seriously injured" as a result of the ensuing emergency evacuation procedures.

This diversity tort-suit followed on February 23, 2011. Docket # 1. In it, Plaintiffs allege that JetBlue's failure to properly maintain its airplane caused the incident. Id. ¶ 10. Plaintiffs also claim that the evacuating process was negligently conducted. Id. ¶ 15.

After JetBlue answered, the Court entered a case management order, see Fed. R. Civ. P. 16(b)(1), setting August, 26, 2011 as the discovery cut-off date. Docket # 16. At the Case Management and Settlement Conference held in August 2011 the parties requested an

---

[1] After securing leave, the plaintiffs also filed a supplemental motion for sanctions, which the defendant opposed; replies were also filed. Dockets # 103, 110, 119 & 122.

**CIVIL NO. 11-1205 (SEC)** **Page 2**

extension of time to conclude discovery, which the Court granted, extending the conclusion of discovery until December 15, 2011. Docket # 28. Upon another joint motion, discovery was again extended until January 16, 2012. Docket # 33.

As the case proceeded, the discovery disputes began. In January 2012, Plaintiffs moved to compel discovery. Docket # 38. They had propounded on JetBlue a set of interrogatories and request for production of documents, see Fed. R. Civ. P. 33 & 34, primarily aimed at discovering the cause of the air cycle machine ("ACM") that malfunctioned during the flight. See Docket # 38-2 & 3. For instance, Plaintiffs requested a list of prior similar (smoke in-the-cabin) incidents, among other related documents. JetBlue resisted discovery, essentially arguing that the requested documents were irrelevant,"as the cause of the smoke was unknown at the time, the ACM's failure was an unforeseeable event to JetBlue."

With the fast approaching discovery deadline, and in "light of the recent discovery hurdles," the Court reluctantly entered a sua sponte order extending the discovery deadline until March 9, 2012. Docket # 47. This was supposed to be a "a final extension of time." Id. Then, on January 23, Plaintiffs' motion to compel was granted, overruling JetBlue's objections to the interrogatories. Docket # 48, p. 1. The Court also said that it was unpersuaded by JetBlue's "relevancy objections with respect to the documents regarding air cycle machines and past smoke in-the-cabin incidents." "Whether [JetBlue] has had a history of smoke in-the-cabin incidents could make the foreseeability factor more or less possible," the Court further reasoned. Id. The Court thus overruled JetBlue's refusal to produce the requested documents: "[T]he smoke—although not the immediate cause of [P]laintiffs' alleged damages— certainly caused the emergency landing. Had there be[en] no smoke, no emergency landing would have

**CIVIL NO. 11-1205 (SEC)**                                                                                      Page 3

ensued." Id., p. 2. Plaintiffs' inquiry was nonetheless circumscribed "to the same type of plane involved in this case: An Embraer 190." Id.[2]

*JetBlue's first discovery violation*

The March 9 discovery cut-off date came and went. But discovery disputes were far from over, as the Court would soon unfortunately realize.

On March 28, 2012, Plaintiffs filed a 22-page motion for "sanctions to deem matters established due to violations of discovery orders." Docket # 52. In a nutshell, Plaintiffs accused JetBlue of refusing to produce documents it "knew" existed, and of having been "untruthful when answering interrogatories . . . ." Docket # 52, p. 2. Plaintiffs alleged that JetBlue's violation of this court's discovery order, "[c]oupled with its pattern of untruthfulness, ha[d] made it impossible for the Reyes family to fairly prepare its case (as to all aspects but damages)." Id., p. 21.

Plaintiffs first explained that JetBlue had finally "responded to their September 27, 2011 Interrogatories and Requests for Production of Documents [the ones object of the order to compel] on March 9, 2012, the last day of the discovery period." Id., p. 4 (emphasis added). Regarding the request to list and describe every incident where a JetBlue aircraft has had smoke in the cabin or cockpit or ACM malfunctions, Plaintiffs argued that, instead of providing them with a "simple list," "JetBlue produced a limited and disorganized jumble of technical, jargon-filled papers . . . ." Id., p. 5. Plaintiffs also complained about a "large 'redacted' watermark that, without any explanation, JetBlue had placed on a page of the requested Flights Operations Manual.

---

[2] Plaintiffs immediately moved for attorney's fees under Fed. R. Civ. P. 37(A)(5)(A) (Docket # 49), but the Court denied their request, holding that "JetBlue's objections were 'substantially justified . . . .'" Docket # 50 (quoting Fed. R. Civ. P. 37(a)(5)(A)(ii)).

**CIVIL NO. 11-1205 (SEC)**                                                                 Page 4

Turning to the alleged instances of untruthfulness, Plaintiffs first referred to their request that JetBlue produce "'any and all communications, including e-mail[s], from Hamilton Sundstrand [("Hamilton")] and/or Embraer to JetBlue in any way related to the repair or maintenance of air cycle machines,'" to which JetBlue responded that "'none exist[ed].'" Id., p. 8 (citations and emphasis omitted).[3] According to Plaintiffs, however, after subpoening Hamilton, this company produced "75 bates-stamped e-mails received by JetBlue personnel, many of which specifically reference smoke-in-the-cabin incidents on board Embraer 190 airplanes caused by faulty air cycle machines bearing the same part number as the one that caused the accident object of this case." Id. As to the second instance of alleged untruthfulness, Plaintiffs argued that the smoke-in-the-cabin incidents that appeared in the aforementioned "document dump," did not include at least two smoke-in-the-cabin incidents on board an Embraer 190 aircraft, which Plaintiffs independently uncovered.

Against this backdrop, Plaintiffs moved the court to deem matters established, see Fed. R. Civ. P. 37(b)(2)(A)(i), arguing that JetBlue's liability should be deemed established. They invoked Chilcutt v. U.S., 4 F.3d 1313 (5th Cir. 1993), in which, as a result of the defendant's discovery abuse, the district court deemed liability established, and the Fifth Circuit affirmed.

Frustrated with the parties' "latest discovery hurdle," the Court was again forced to "reshuffle the case management deadlines" on March 29. Docket # 54. The Court also scheduled a status conference for April 18, 2012, ordering the parties to come prepared to discuss Plaintiffs' motion for sanctions.

In the interim, JetBlue filed a 27-page opposition to the pending motion for sanctions. Docket # 57. As to Plaintiffs' protestations regarding the "documents dumps," JetBlue retorted

---

[3] Hamilton Sundstrand appears to be the company that provides maintenance to JetBlue's ACMS.

**CIVIL NO. 11-1205 (SEC)**                                                                                      Page 5

that, under Fed. R. Civ. P. 33(d), it had "opted to produce business records in lieu of interrogatory answers." Docket # 57, p. 6. Regarding the "redacted" watermark, JetBlue rehashed its previous explication that it was "to prevent irrelevant information from being disclosed in this litigation." Id., p. 9. As to the e-mails from Hamilton, JetBlue submitted an affidavit from a JetBlue employee, explaining that these e-mails were deleted as part of its document 90-day disposal policy. Id., p. 12-13. Accordingly, the explanation went, JetBlue correctly claimed that none of these documents existed. Id., p. 13. JetBlue also contested Plaintiffs' accusation that it had omitted from the "document dump" two smoke-in-the-cabin incidents, but conceded that records of such incidents were "inadvertently not located in JetBlue's data base . . . [and that it was currently] investigating this issue internally." Id., p. 17.

As to Plaintiffs' legal argument, JetBlue contended that Plaintiffs' reliance on Chilcutt was mislaid. JetBlue argued that "[t]here has been no ruling from the Court finding that JetBlue has failed to comply with any court order, or advising JetBlue of the possibility of imposing sanctions." Id., p. 23. Moreover, JetBlue averred that it had complied with "its discovery duties and can hardly be said to have incurred in the obstinate conduct displayed by the defendant in Chilcutt." Id.

The status conference was held in April. There, the Court made clear that it "gave serious consideration to [P]laintiffs' accusations regarding [JetBlue's] failure to conduct discovery in a good faith manner." Minutes of April 18, 2012 Status Conference, at Docket # 59, p. 1. (D.P.R. Apr. 18, 2012) (emphasis in original). After hearing the parties' colliding positions with respect to the "latest discovery dispute," the Court found that "some of [JetBlue's] answers ha[d] not been meaningful and truthful." Id. The Court nonetheless held that JetBlue's "transgressions" were insufficient to "establish[] liability pursuant to Chilcutt." Id. "In due time," the Court made clear, "it w[ould] impose the appropriate sanctions" on JetBlue. Id. Because of its noncompliance with the order to compel, JetBlue was ordered to comply with

**CIVIL NO. 11-1205 (SEC)**                                                                                         Page 6

it and thus with Plaintiffs' protestations.[4]  As a result of the conference, the parties requested another extension of time, which the Court granted, extending the discovery cut-off date until May 30.

In the same time frame, the Court entered an order that provided:

> [t]he time has come to impose such sanctions upon [the] defendant for its failure to conduct discovery in a good faith manner, and for wasting this court's limited time and resources in resolving this unnecessary discovery dispute. After careful consideration, [the] defendant shall pay for the expenses and reasonable attorney's fees incurred by [the] plaintiffs in drafting their motion for sanctions. To that effect, [the] plaintiffs shall file a Bill of Expenses by 5/4/2012 for consideration. If reasonable, the Court will approbate it. Docket # 60, p. 2.

Plaintiffs complied and submitted an unopposed motion for attorney's fees, attaching a bill of expenses totaling $3,450. Docket # 61. The Court granted it, and thus imposed a $3,450 sanction on JetBlue. Docket # 83.

*The Second Motion for Sanctions*

On May 4, 2012—less than 4 weeks before the May 30 discovery cut-off date—Plaintiffs filed the second motion for sanctions now pending adjudication, alleging that JetBlue had again violated this court's orders compelling disclosure. Docket # 62, p. 3. Plaintiffs also accused JetBlue of outright lying to this court. That same day, and seeking to avoid any further

---

[4] Specifically, the Court gave JetBlue 10 days to produce the following documents:

(1) the flight crew irregularity report for all smoke-in/smell/fumes accidents involving air cycle machines in the Embraer 190; (2) the investigative reports for all such accidents; and (3) the [Flight Operations Manual] . . . and the Flight Attendant Manual without the "redacted" watermarks. Further, defendant shall prepare a list of all the previous accidents in question. Thereafter, defendant has ten days to schedule a meeting with plaintiffs' counsel to explain the aforementioned documents. If necessary, furthermore, defendant shall make a company representative available to explain any questions plaintiffs might harbor with respect to these documents.

**CIVIL NO. 11-1205 (SEC)**                                                                                          Page 7

delays, the Court shortened JetBlue's deadline to respond, making clear that it was "extremely frustrated by the parties' latest discovery hurdle." Docket # 63.

Then, on May 14, JetBlue filed an "informative motion regarding supplemental disclosure," apprising the Court of a new document that, alas, would spawn further discovery disputes. JetBlue explained that it had provided Plaintiffs with the so-called Final Safety Investigation Report (the "Report") related to the incident object of this lawsuit. Although the Report had been released "on or about August of 2011," Docket # 85, p. 4, JetBlue had "understood that it was legally protected from disclosure under 49 U.S.C. § 40123 and 14 C.F.R. Part 193." Docket # 68, p. 1. JetBlue also justified its refusal to produce the Report, saying that it was "under the impression that a common-law or 'self-critical analysis' privilege applied" to it. Id., p. 2. Upon receipt of the Report, JetBlue further explained, its Puerto Rico attorneys advised it "that its privilege and confidentiality claims did not shield" the Report from disclosure. Id.

Unsurprisingly, Plaintiffs sought leave to supplement their second motion to deem liability established. Leave was granted, and the plaintiffs filed a supplementary motion, arguing that the Report "reveal[ed] the existence of much evidence" that they had previously requested, but that JetBlue never produced. Docket # 103, p. 1. This, Plaintiffs maintain, violates this court's discovery orders as well as JetBlue's duty to supplement. Plaintiffs specifically point to a plethora of documents alluded to in the Report that JetBlue should have disclosed. Id., p. 5. Additionally, they argue that the Report contradicts much of JetBlue's previous submissions to this court. Id., p. 7. Plaintiffs now request that a full default judgment be entered against JetBlue.

Arguing that an entry of a default judgment would constitute a "perversion of justice," JetBlue opposed. Docket # 110, p. 2. JetBlue first maintains that Plaintiffs' contention that the Report refers to documents that JetBlue has not produced is without merit, as none of these

**CIVIL NO. 11-1205 (SEC)**                                                                                                    Page 8

documents was requested during discovery. Id., p. 12. Nor were they subject, JetBlue says, to the discovery orders. Id., p. 11. JetBlue opposed all of Plaintiffs' contentions. Briefing continued until September 2012.

**Standard of Review**

Federal Rule of Civil Procedure 37(b) equips courts with a "veritable arsenal of sanctions," Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007) for failure to (1) comply with discovery directives; and (2) disclose information under Fed. R. Civ. P. 37(c)(1). Such sanctions include, but are not limited to, rendering a default judgment. See Fed. R. Civ. P. 37(b)(2) (A)(vii).  It is also common ground that a federal courts's inherent power to manage its affairs "includes the authority to dismiss an action where a party's conduct egregiously abuses that process," R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 20 (1st Cir. 1991), and to render default judgment in response to a defendant's abusive litigation practices. Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 11-12 (1st Cir.1985), cert. denied, 475 U.S. 1018 (1986).

While the First Circuit has described default judgment against a disobedient party as a "drastic sanction," Crispin-Taveras v. Municipality of Carolina, 647 F.3d 1, 7 (1st Cir. 2011) (quoting Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 51 (1st Cir. 2009)), it has made clear that "its entry 'provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice.'" Companion Health Services, Inc. v. Kurtz, 675 F.3d 75, 84 (1st Cir. 2012) (citation omitted and emphasis added).  Because this sanction is "contrary to the goals of resolving cases on the merits and avoiding harsh or unfair results," courts must "balance these competing considerations before entering default." Id. (citations and internal quotation marks omitted). Such a balancing, which "must be handled on a case-by-case basis," Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003), includes the following relevant factors:

**CIVIL NO. 11-1205 (SEC)** Page 9

the nature of the misconduct, its repetition (or lack thereof), its degree of deliberateness, the extent to which the offender had fair warning of the possible consequences of misconduct, the availability vel non of an opportunity to offer an explanation or to plead for leniency, the legitimacy of any proffered excuse, any other aggravating or mitigating circumstances, the presence or absence of prejudice to the other party, the degree of interference with the functioning of the court, and the adequacy of lesser sanctions. Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 38 (1st Cir. 2012) (citing Vallejo v. Santini-Padilla, 607 F.3d 1, 8 (1st Cir.2010); Robson v. Hallenbeck, 81 F.3d 1, 2-3 (1st Cir.1996)).

**Applicable Law and Analysis**

*Material Factual Findings*

Prior to imposing a default judgment, a court must make sufficient "material factual findings" in order to establish "which discovery violations . . . [are] the basis of its ultimate sanction." Companion Health Services, Inc., 675 F.3d at 83; accord Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976) (district court must consider full record in deciding whether to dismiss for failure to comply with discovery orders). The analysis concerning the discovery violations is thus preceded by the corresponding factual findings.

*A.   Failure to timely disclose the Report*

Plaintiffs first allege that JetBlue violated the discovery orders by "hiding" the Report for at least 8 months before finally producing it less than 3 weeks before the May 30 discovery cut-off deadline. Docket # 80, p. 4. JetBlue concedes that "it should not have withheld the production of the [Report] . . . ." Docket # 85, p. 5. This concession is well-taken, not least because there is simply no getting around the fact that JetBlue withheld this document. As relevant here, however, the inquiry now turns on whether JetBlue withheld the Report in "bad faith." Companion Health Services, Inc., 675 F.3d at 85.

In an attempt to justify its acknowledged "violating behavior," JetBlue posits in a footnote that "it had a plausible justification for withholding [the Report]." Docket # 85, p. 5 n. 5. "In other words, " JetBlue maintains, "the withholding was not arbitrary' or made in bad

**CIVIL NO. 11-1205 (SEC)**                                                                                         Page 10

faith." Id.  As previously indicated, JetBlue proffers two reasons to justify its withholding. Both are unavailing.

First, JetBlue says—without explaining why—that "it was under the impression that a common-law or 'self-critical analysis privilege' applied to the Report." Id. This argument lacks force. As another court has previously explained to JetBlue, as a "matter of federal law . . . it is unlikely that the self-critical analysis privilege exists." Granberry v. Jet Blue Airways, 228 F.R.D. 647, 650 (N.D. Cal. 2005).  Even assuming its existence and doubtful applicability in this diversity suit, see Fed. R. Ev. 501 (a) ("[S]tate law governs privilege regarding a claim or defense for which state law supplies the rule of decision."), JetBlue still had the duty to come forward and claim the privilege. See Fed. R. Civ. P. 26(b)(5)(A)(i) (proponent of a privilege must "expressly make the claim"). It did not, however.

Second, JetBlue alludes to the following confidentiality notice contained in the footer of every page of the Report:

> WARNING: The information contained in this document is confidential. This information was collected and this report created for purposes of safety analysis. This document is for internal use only and should not be disseminated outside of JetBlue without the direct consent of the Chief Safety Officer. The information in this document may be protected from disclosure under 49 U.S.C., section 40123 and 14 CFR part 193. Docket # 80-2.

But even a perfunctory review shows that the above-cited statute and its regulations are plainly inapplicable. 49 U.S.C.A. § 40123, as correctly observed by Plaintiffs, applies only to the Federal Aviation Administration.[5] By like token, 14 C.F.R. § 193, the regulation promulgated under 49 U.S.C.A. § 40123, merely "describes when and how the FAA protects from disclosure

---

[5] 49 U.S.C.A. § 40123 provides in pertinent part that, barring two exceptions, "neither the Administrator of the Federal Aviation Administration, nor any agency receiving information from the Administrator, shall disclose voluntarily-provided safety or security related information . . . ."

safety and security information . . . [submitted] voluntarily to the FAA." 14 C.F.R. § 193.1. In any event, the correct course of action was to come forward and claim this privilege, not to remain silent for over 8 months. See Vazquez-Fernandez v. Cambridge College, Inc., 269 F.R.D. 150, 160 (D.P.R. 2010); see also In re Air Crash at Lexington, Kentucky, 545 F. Supp. 2d 618, 619 (E.D. Ky. 2008).

After carefully analyzing this situation, the Court is convinced that, in withholding the Report for over 8 months, JetBlue acted in bad faith. None of the proffered justifications explain why JetBlue waited until the eve of the discovery deadline to come forward with the highly relevant Report. Rather, it appears that such an unjustifiable delay was meant to gain a strategical edge over Plaintiffs. This sort of gamesmanship is frowned upon and ought to be sanctioned. See 6-26 Moore's Federal Practice - Civil § 26.90[1] ("Failure to follow the procedures set forth in Rule 26(b)(5)(A) subjects the party to sanctions . . . ."). Indeed, JetBlue's behavior flouted the framework ushered by the Federal Rules of Civil Procedure, requiring "the parties to put all their cards on the table." Baez-Eliza v. Instituto Psicoterapeutico de Puerto Rico, 275 F.R.D. 65, 69 (D.P.R. 2011); see also, e.g., Martin v. Reynolds Metals Corp., 297 F.2d 49 (9th Cir. 1961) ("One of the purposes of the Federal Rules of Civil Procedure was to take the sporting element out of litigation, partly by affording each party full access to evidence in the control of his opponent."). Discovery, the Supreme Court has admonished, is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble Company, 356 U.S. 677, 682-683 (1958). To make matters worse, JetBlue's unjustified decision to withhold the Report for over 8 months has delayed this case, wasting the Court's time and valuable resources in the process. In this way, its behavior ran afoul of the guiding principle that litigation must be streamlined in order to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; see also Nelson v. Adams USA, Inc., 529 U.S. 460, 465 (2000).

**CIVIL NO. 11-1205 (SEC)**                                                                 Page 12

Finally, it bears emphasis that the Report is a central piece of evidence in this case. See Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d at 12 (placing weight on the "centrality of the evidence" object of the discovery dispute, and affirming district court's entry of default judgment). Without entering into its confidential nature, the Report appears to cast a shadow over the proper procedures and decisions taken by the flight crew during the forced landing and subsequent evacuation process. It also contains information regarding the airline's apparent history of ACM problems involving their Embraer 190 fleet. The Report is plainly material, and some of its contents fortify Plaintiffs' allegations.

In sum, JetBlue "dishonestly withheld information." Hull v. Municipality of San Juan, 356 F.3d 98, 101 (1st Cir. 2004). This transgression cannot be countenanced.

  *B. Dishonesty*

Having established that JetBlue willfully withheld the Report, the question becomes whether JetBlue lied when asked about the Report's existence. This, of course, would constitute an independent discovery violation. See, e.g., Negrete v. National R.R. Passenger Corp., 547 F.3d 721, 724 (7th Cir. 2008) ("[I]t does not take a graduate degree to understand that it is unacceptable to hide evidence and lie in a deposition."). Plaintiffs are convinced that JetBlue lied to them on this front. Before delving into specifics, however, some context is in order.

On July 11, 2011, JetBlue produced an unsigned, two-page preliminary safety memorandum dated March 24, 2010 (the "Memorandum"). Docket # 80-4. The Memorandum, which was prepared by JetBlue's "Quality Assurance Auditor," James Swamback, provided that . . . [the Report] w[ould] be released by the Safety Investigation team." Id., p. 2. JetBlue claims, without providing any statements under penalty of perjury, that the Report "was released on or about August of 2011." Docket # 85, p. 4.

The instance of mendacity pointed by Plaintiffs allegedly took place at the September 16, 2011 deposition of Swamback. There, Swamback was asked the following question: "The only

**CIVIL NO. 11-1205 (SEC)**                                                                 Page 13

[safety] report rendered within JetBlue was the [Memorandum] rendered by you?" Docket # 80-5, p. 9:15-17 (emphasis added). Swamback riposted, "Exactly. <u>Just</u> the one that I provided." <u>Id.</u> (bold omitted and emphasis added). Taking JetBlue's allegations at face value that the Report was released on "on or about August 2011," Swamback's response raises eyebrows. Bluntly, Swamback denied the Report's existence even though it had been already released for <u>at least</u> a month. Such a contradiction is troubling at the very least.[6]

      Unsurprisingly, as it does through all its oppositions, JetBlue downplays this situation with a "simple and rational explanation." Docket # 85, p. 4. Because Swamback was "not aware that the [Report] had been released," JetBlue maintains, "he correctly testified at his deposition that the only report rendered within JetBlue that he was aware of was the . . .[Memorandum] that he had prepared." <u>Id.</u> Although no after-the-fact affidavits have been furnished on this front either, JetBlue's opposition argues that Swamback's "unawareness" resulted from an "oversight." <u>Id.</u> There is an air of unreality about JetBlue's argument.

      Just like the Court declines to believe that JetBlue ignored the well-known rule that a proponent of a privilege must "expressly make the claim," Fed. R. Civ. P. 26(a)(5)(A)(i), it finds that JetBlue's latest explanation strains reason to its breaking point. JetBlue again concedes (as it must) that Swamback had "some important but limited participation" in the Report's preparation. Docket # 85, p. 6. And that is unsurprising: Swamback, after all, authored the preceding Memorandum. He was also listed as <u>one</u> of the <u>6</u> members of the "Investigation Team" in charge of the Report. Docket # 80-2, p. 34. A robust inference reasonably follows:

---

   [6] JetBlue's failure to provide an exact date for the Report's release is conveniently ambiguous. But the Court need not tarry long here, as it already determined that JetBlue improperly withheld the Report (thereby violating its duty to supplement under Fed. R. Civ. P. 26(e)), though this could mean that its withholding lasted longer than 8 months.

**CIVIL NO. 11-1205 (SEC)**                                                                                           Page 14

Swamback knew of the Report's release.  The upshot is that JetBlue's explanations are illegitimate.

If more were needed, suffice it to say that "judges are [not] required to divorce themselves of common sense," where as here, an explanation is "inherently unbelievable." U.S. v. Portalla, 496 F.3d 23, 28 (1st Cir. 2007) (citation and internal quotation marks omitted); see also Fed. Deposit Ins. Corp. v. Francisco Inv. Corp., 638 F. Supp. 1216, 1219 n. 3 (D.P.R. 1986) ("We judges should not, after all, be so naive as to believe statements which no one else would believe.") (citation and internal quotation marks omitted)), aff'd, 873 F.2d 474 (1st Cir. 1989). And here, common sense dictates that a witness, particularly one who is directly involved in the preparation of an accident report, would come prepared to a deposition concerning precisely his knowledge of such a report.

In short, Swamback's denial was dishonest.  Because his knowledge is imputable to JetBlue, see, e.g., Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 590 (9th Cir. 1983), it follows that JetBlue dishonestly denied the Report's existence.

   *C.     Other Issues*

The Court is also troubled by JetBlue's instances of redacting documents on "relevance" grounds without first providing any type of log—a dubious practice to begin with. See Beverage Distributors, Inc. v. Miller Brewing Co., No. 2:08-827, 2010 WL 1727640, at *6 (S.D. Ohio Apr. 28, 2010). As related, the Court had overruled JetBlue's unfounded decision to redact the Flight Operations Manual. Docket # 59. Now Plaintiffs correctly point that the redacted information could not have been more relevant. Indeed, the first sentence of the unredacted text provides that "[t]he senior person (Captain, First Officer, etc.) at the scene of the aircraft accident must ensure Customers and Crew have all possible assistance to protect them from death or injury." Docket # 62-12. Since a prominent issue here is whether JetBlue's employees negligently evacuated the plane, it is simply incredible that JetBlue told this court that this information was irrelevant.

**CIVIL NO. 11-1205 (SEC)**                                                                                           Page 15

JetBlue sees things differently. It argues that Plaintiffs' contention on this front "is designed only to harass." Docket # 74, p. 6. Because the Court already imposed sanctions, the argument goes, JetBlue should not be penalized again for complying with the court's order by producing the unredacted text. This argument is unavailing. It is true that the first discovery (Docket # 48) overruled virtually all of JetBlue's boilerplate "relevance" objections. But the sanctions were imposed for other reasons, namely JetBlue's failure to reveal past smoke-in-cabin accidents and other untruthful and evasive responses. See Dockets # 59 & 60. At the time the sanctions were imposed, the Court was unaware of the content of the redacted information. Now that Plaintiffs have aptly directed the Court's attention to the content of the improperly redacted document, however, the inquiry zeroes in on the truth behind JetBlue's statements that the redacted information was "irrelevant." As concluded above, labeling the redacted information as irrelevant flies in the face of reason. So lodging such a meritless and unfounded objection bordered on dishonesty and buttresses JetBlue's lack of candidness and failure to conduct discovery in a good faith fashion.[7]

*Appropriate Sanctions*

The foregoing material findings of fact leave no doubt that sanctions are warranted. The choice of sanction, unsurprisingly, is a closer call. The Court already imposed a $3,450 sanction on JetBlue for its failure to conduct discovery in a good faith manner, ruling that some of its

---

[7] While Plaintiffs complain about other discovery violations, the Court addressed only the most salient ones. A few remarks regarding other discovery violations are nonetheless in order. First, the Court is troubled by JetBlue's failure to have produced some of the documents alluded to in the Report in clear violation of the discovery orders and its duty to supplement. The Court is unpersuaded by JetBlue's counterintuitive argument that not a single category in the Court-approved discovery requests covered the documents on which the Report's conclusions are based. Second, JetBlue's explanation that the Report was completed "on or about August 2011" puts into question whether it willfully destroyed the written communications with Embraer and Hamilton. As Plaintiffs tersely put it: "how can [JetBlue] claim that it destroyed communications by virtue of the retention policy, when there was a litigation hold in place months before it prepared the Final Report?" Docket #119, p. 6.

**CIVIL NO. 11-1205 (SEC)**                                                                                                          Page 16

answers "ha[d] not been meaningful and truthful." Docket # 59. "Milder" alternatives have thus been exhausted, to no avail. Although not obliged to do so, the Court already "slapped the offender on the wrist." Hooper-Haas, 690 F.3d at 39.

As said, Plaintiffs request that a full default judgment be entered against JetBlue. After "thoughtful consideration of all the factors involved" in this case, Damiani v. Rhode Island Hospital, 704 F.2d 12, 17 (1st Cir. 1983), the Court reluctantly agrees with Plaintiffs' remedial choice. The short of it is that the cumulative weight of the evidence of record shows that JetBlue has "engaged in a deliberate pattern of stonewalling with the aim of frustrating effective discovery and the progress of the case." Companion Health Services, Inc., 675 F.3d at 85. JetBlue withheld the Report in bad faith; it made a crucial false statement in a deposition; and objected to the production of documents on untruthful "relevance" grounds, among other violations, see, e.g., note 7 above. JetBlue's stonewalling also forced this court to extend some of the scheduling order deadlines; its recalcitrant behavior caused unwarranted delays, and a waste of limited time and judicial resources. Such machinations, together with JetBlue's previous transgressions, form "a pattern of prolonged and vexatious obstruction of discovery with respect to highly relevant records." Id. (quoting S. New Eng. Tel. Co. v. Global NAPs Inc. (SNET ), 624 F.3d 123, 148 (2d Cir.2010)).

Ever since the first discovery dispute, when JetBlue resisted discovery and raised boilerplate objections to the discovery requests, the Court abstained from imposing any sanctions on JetBlue, though such objections should have been sanctionable. Cf. Steed v. EverHome Mortg. Co., 308 Fed.Appx. 364, 371 (11th Cir. 2009) (noting "that boilerplate objections may border on a frivolous response to discovery requests"). Since JetBlue's relevancy objections seemed justified at that time, however, the Court denied Plaintiffs' motion requesting payment of expenses and attorney's fees. The Court nonetheless overruled virtually all of JetBlue's objections, ordering production of the requested documents. As the discovery disputes

**CIVIL NO. 11-1205 (SEC)**                                                                                     Page 17

resurfaced, it turned out that JetBlue withheld potentially damaging documents—such as some past smoke-in-cabin incidents—and provided untruthful and evasive answers. See Dockets # 59 & 60. Because this behavior had violated the discovery order granting Plaintiffs' motion to compel, the Court—stopping short of granting Plaintiffs' request to deem JetBlue's liability established—imposed a monetary sanction on JetBlue.

The latest transgressions constitute new discovery violations and, regrettably, have tipped the scale in the direction of default judgment on the merits, admittedly "a strong medicine . . . ." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). JetBlue's overall conduct evinces a "history of evasiveness and intransigence," Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 12 (1st Cir. 1985), that have converted discovery into what the Tenth Circuit disapprovingly described as a "shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered." Lee v. Max Int'l, LLC, 638 F.3d 1318, 1322 (10th Cir. 2011).

JetBlue vehemently rebuts that it would be unfair to impose this sanction. It offers responses to the court's ultimate conclusion, but none is persuasive.

JetBlue first maintains that because "no warnings of terminating sanctions have been lodged," a default judgment is unsuitable. Docket # 110, p. 19. While this argument has some force, it still fails to carry the day. It is well settled that a district court's failure to issue "clear warnings that sanctions were imminent," Companion Health Services, Inc., 675 F.3d at 86, weighs against default judgment on the merits. See, e.g., id. (citing SNET, 624 F.3d at 148 (basing affirmance of default sanction in part on district court's warning that default would be imposed). And it is true that JetBlue was not explicitly warned that the Court would enter a default judgment. But JetBlue, at the very least, had "constructive notice" that this court might do just that. See Young Again Products, Inc. v. Acord, 459 F. App'x 294, 304 (4th Cir. 2011), cert. denied, 133 S. Ct. 140 (2012).

**CIVIL NO. 11-1205 (SEC)**  Page 18

The Fourth Circuit's rationale in Acord illustrates this concept. There, the defendants appealed the district court's entry of default judgment, complaining that the court had not "warn[ed] them of the possibility of default judgment." Id. at 303. Affirming, the court reasoned that the defendants had "constructive notice" that default judgment was a real possibility. Id. at 304. The Fourth Circuit stressed that the plaintiff "had repeatedly sought sanctions and the district court said it was on the verge of sanctioning [the defendants] several times." Id. The court also considered that the district court had warned one of the defendants that "it was unhappy with his behavior." Id.

In this case, Plaintiffs filed two motions to deem JetBlue's liability established, and a third supplemental motion requesting default judgment on the merits; JetBlue opposed every single one of them.[8] In fact, for the last year this case has unfortunately revolved around Plaintiffs' motions for sanctions and JetBlue's discovery violations, having produced hundreds of pages in the process. Such a comprehensive motion practice suffices to conclude that JetBlue has had ample notice of the possibility of default. See Adams v. Trs. of the N.J. Brewery Emps. Pension Trust Fund, 29 F.3d 863, 871 (3d Cir.1994) (finding that a party "had adequate opportunity to defend itself against dismissal without such formal notice" where the other party had moved for sanctions); cf. Brockton Sav. Bank, 771 F.2d at 12 (basing affirmance of default sanction in part on district court's "avowed purpose to offer . . . [defendant] the opportunity to explain and justify the lateness of the revelation . . ."); Hooper-Haas, 690 F.3d at 39. At the status conference, moreover, the Court made clear that it gave "serious consideration to Plaintiffs' accusations regarding [JetBlue's] failure to conduct discovery in a good faith

---

[8] As JetBlue has correctly noted, deeming liability established under Fed. R. Civ. P. 37(b)(2)(A)(i) "is tantamount to . . . entering default judgment." Docket # 85, p. 15 (quoting 7-37 Moore's Federal Practice - Civil § 37.51[2]). Hence, JetBlue has known all along that default judgment was a real possibility.

**CIVIL NO. 11-1205 (SEC)**                                                                                                           Page 19

manner." Docket # 59, p. 1 (emphasis in original). At that time, JetBlue's "transgressions," while serious, had not been egregious enough to warrant the harsh sanction requested by Plaintiffs: Deeming JetBlue's liability established. Id. But JetBlue was duly warned of this court's unhappiness with its behavior. See Hooper-Haas, 690 F.3d at 39 ([T]he appellant was given two pointed warnings and had an opportunity . . . to oppose the appellees' request for the entry of a default."); see also Remexcel, 583 F.3d at 52. JetBlue had more than sufficient that default judgment on the merits was a real possibility.

      Finally, JetBlue mentions in passing that no "serious prejudice" has been caused to Plaintiffs. Docket # 85, p. 16; see Hooper-Haas, 690 F.3d at 38 (listing as relevant factor "the presence or absence of prejudice to the other party"). The Court is unpersuaded. Plaintiffs were plainly prejudiced by JetBlue's willful withholding of the Report; such an unfortunate tactic placed Plaintiffs at an unfair disadvantage. The prejudice to Plaintiffs is also manifested in their understandable chief complaint: "That the Reyeses do not know, and have no way of knowing, what documents JetBlue has but will never produce." Docket # 80, p. 10.[9] Recognizing this concern, the Ninth Circuit has said that "the most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1097 (9th Cir. 2007) (footnoted and citation omitted). Here JetBlue has damaged the "integrity of the discovery process." Id. There is thus no assurance of proceeding on the true facts.

      To be sure, the Court is inherently disinclined to impose this harsh sanction in view of well-known "general policy favoring adjudication on the merits." Starski v. Kirzhnev, 682 F.3d

---

[9] See also id., p. 10 ("[G]iven JetBlue's repeated untruthfulness and flagrant discovery misconduct, there is simply no way to ever guarantee that it has produced all of the evidence covered by its discovery obligations . . . .").

**CIVIL NO. 11-1205 (SEC)**                                                                                        Page 20

51, 55 (1st Cir. 2012). But this concern is outweighed by the need for deterrence of the particular abuses involved here, and by the necessity "to maintain institutional integrity . . . ." Id. The Court is particularly dismayed by JetBlue's willful withholding of the Report, an intolerable violation that must be deterred. This violation is compounded by Swamback's dishonest denial of the Report's existence, which in turn reinforces the inference that JetBlue sought to conceal this highly pertinent (and potentially adverse) document. These and other violations, taken together with JetBlue's previous discovery obstructions, form a pattern of abuse discovery practices that is beyond the pale.

In sum, the totality of the circumstances support the requested sanction. This case offers the default of JetBlue "as a cautionary example of the price of discovery intransigence." Harhay v. Starkey, No. 08-CV-30229, 2010 WL 1904874, at *7 n. 6 (D. Mass. May 10, 2010).

**Conclusion**

For the reasons stated, Plaintiffs' motion for sanctions is **GRANTED**. Default judgment on liability will therefore be entered against JetBlue. A hearing on damages will be scheduled shortly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of March, 2013.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge